IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELMER RODRIGUEZ, | : | |
| | : | |
| Plaintiff, | : | No. 4:07-CV-748 |
| | : | |
| v. | : | Judge Jones |
| | : | |
| ALBERTO GONZALES, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

## February 6, 2008

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before this Court is a "Motion to Dismiss or, in the Alternative, for Summary Judgment" ("the Motion"), filed by all Defendants[1] on August 27, 2007. (Rec. Doc. 20 (emphasis omitted)).  For the reasons that follow, the Motion shall be granted.

---

1  In his Complaint, Plaintiff Elmer Rodriguez ("Plaintiff" or "Mr. Rodriguez") identified Defendants to this action in the following manner: United States Attorney General, Alberto Gonzalez ("Mr. Gonzalez"); Director of the Bureau of Prisons, Harley Lappin ("Mr. Lappin"); Acting Warden, T. M. Szulanczyk ("Mr. Szulanczyk"); and a physician assistant, C. Craig ("Mr. Craig").  In the caption of Plaintiff's Complaint, Plaintiff may have also named the United States Department of Justice as a Defendant, although the same may also simply have been descriptive of former Attorney General Gonzalez.

**PROCEDURAL HISTORY:**

On April 23, 2007, Plaintiff initiated this <u>Bivens</u>[2] action by filing a Complaint and an Application to Proceed <u>In Forma Pauperis</u>. (<u>See</u> Rec. Docs. 1, 2).

On August 27, 2007, Defendants filed the instant Motion.[3] (<u>See</u> Rec. Doc. 20). As the Motion has been fully briefed (<u>see</u> docs. 21, 26, 27, 28),[4] it is ripe for our disposition.

**STANDARDS OF REVIEW:**

**A.   MOTIONS TO DISMISS:**

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a

---

2 <u>See</u> <u>Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). As defense counsel aptly notes (<u>see</u> doc. 21 at 2 n.2), despite Plaintiff's attachment of his administrative tort claim (doc. 1 at 21-22) to his Complaint, he failed to named the United States as a Defendant or to properly serve the United States, as opposed to a United States agency, under Fed. R. Civ. P. 4(i). Additionally, Plaintiff's Complaint lacks any citation to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, <u>et seq.</u>, and any explicit allegations of negligent or otherwise tortious conduct. Thus, only Plaintiff's <u>Bivens</u> claims are properly before us, and the same will be the sole foci in the remainder of our discussion.

3 Insofar as the Motion's title, and the materials filed in support thereof, make it clear that a portion of the Motion seeks summary judgment, no conversion to such a motion by this Court was required. Moreover, Plaintiff's submissions opposing the Motion reveal that the documents upon which Plaintiff relies to oppose that portion of the Motion that seeks summary judgment are already a part of the record, as they are attached to the Complaint. (<u>See</u> Rec. Doc. 1 at 10-22).

4 We note that despite Plaintiff's failure to seek this Court's leave to file a sur-reply, we have considered the contents of the same in our disposition of the pending Motion.

court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). A Rule 12(b)(6) motion should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved . . . [b]ut a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse, 132 F.3d at 906.

B.  **MOTIONS FOR SUMMARY JUDGMENT:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."

Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**STATEMENT OF MATERIAL FACTS:**

In light of the nature of the pending Motion, our recitation of the facts underlying this action is based upon our thorough review of the contents of each of the following: Plaintiff's Complaint and the documents attached thereto (see doc. 1), Defendants' Statement of Material Facts[5] (doc. 22), and the record submitted by Defendants (see doc. 21). As required by the applicable standards of review, we have viewed all facts and inferences therefrom in the light most favorable to

---

5 Given Plaintiff's failure to comply with Local Rule 56.1, we could have deemed admitted at least all of the factual allegations in Defendants' Statement of Material Facts that were not contradicted by Plaintiff's submissions. See, e.g., Tome v. Harley Davidson Motor Co., 2007 U.S. Dist. LEXIS 78789, at *1-2 (M.D. Pa. Oct. 24, 2007). However, we elected not to do so because our review of the record before us clearly revealed the material and largely undisputed facts that follow.

Plaintiff. Additionally, pursuant to Haines v. Kerner, 404 U.S. 519, 520 (1972), we have also liberally construed this pro se Plaintiff's allegations.

This action arises out of the medical treatment that this pro se Plaintiff received for chronic left knee pain while he was incarcerated at the Low Security Correctional Institution, in Allenwood, Pennsylvania ("LSCI-Allenwood"). Plaintiff's pertinent allegations regarding his injury and treatment therefor (see doc. 1) follow: On an unspecified date, while playing basketball at LSCI-Allenwood, Plaintiff injured his left knee. Thus, in November 2003, Mr. Craig, a physician's assistant at LSCI-Allenwood, drained the left knee in an effort to reduce the "constant pain and swelling," id. at 4, and also recommended that Plaintiff undergo an MRI. An x-ray and a January 29, 2004 MRI revealed no injury.

Nevertheless, in October 2004, Plaintiff returned to the medical unit complaining of the same pain and swelling that he had experienced the year prior. Again, Mr. Craig drained Plaintiff's left knee. However, Plaintiff appears to allege that during this October 2004 treatment of his knee, Mr. Craig made a mistake and left a portion of the metallic needle in Plaintiff's knee. See id. at 5-7. In support of this allegation, Plaintiff avers, inter alia, that during the October 2004 draining, Mr. Craig looked nervous and Plaintiff saw blood draining out of his knee, which had

6

not occurred during the prior draining. Plaintiff also notes that following this draining, he continued to experience difficulty with his knee,[6] and that on January 24, 2006, an MRI revealed a likely (see also doc. 21-2 at 106) metallic foreign object in his knee.[7]

Finally, despite Plaintiff's initial claim that LSCI-Allenwood had no grievance procedure, Plaintiff's Complaint details the steps that he undertook in attempting to achieve an informal resolution of what he contends amounted to deliberate indifference in the provision of medical care, and he attaches substantially documents confirming his summary.[8] (Rec. Doc. 1 at 2, 5-7). First, on March 3, 2005, Plaintiff filed an "Informal Resolution," expressing his concerns about the persistent pain in his left knee and the failure to refer him to an orthopedic specialist. Next, on April 1, 2005, Plaintiff apparently submitted to medical director James Potope, an "Inmate Request to Staff," which claimed that a

---

6 Although not material to our determination herein, we note for the record that despite Plaintiff's apparent chronic knee pain and his self-described belief "that [his] life is in danger and that this foreign metallic object that was introduce [sic] by P.A. Craig into [his] body still is a threaten [sic] to my life, or any other vital organ," Plaintiff somewhat inexplicably continued to play both basketball and softball, quite well. (See Rec. Doc. 21-3 at 1-39 (containing Declaration from Recreational Supervisor at LSCI-Allenwood and such supporting documents as team rosters)).

7 Again, although not material to our determination herein, we note that despite the January 24, 2006 MRI's finding, Thomas L. Martin, M.D., a private orthopedist, did not recommend surgery. (Rec. Doc. 21-2 at 98-99).

8 With the exception of Plaintiff's initial complaint, Plaintiff's submissions apparently followed his receipt of unsatisfactory responses to his preceding complaints.

scheduled MRI and trip to a hospital had been canceled and again sought examination by a specialist. Then, on April 15, 2005, Plaintiff filed a "Request for Administrative Remedy," which appears to reference the allegedly problematic visit to Mr. Craig, and which asks whether health services can address the persistent pain and swelling that followed. On May 8, 2005, Plaintiff filed a "Regional Administrative Remedy Appeal." Therein, Plaintiff indicated that on October 7, 2004, Mr. Craig made a mistake in draining his knee, and Plaintiff requested that an MRI be done, that orthopedic specialist be consulted, and that "an investigation be conducted to see if pa Craig was authorized to drain [the] knee . . . ." (Rec. Doc. 1 at 15). Plaintiff's May 8, 2005 submission also requested "to see have [sic] a copy of PA Craig's license and credentials to see if he is authorized to performe [sic] such operations." Id.

A review of the record provided by Plaintiff reveals that on June 22, 2005, D. Scott Dodrill ("Mr. Dodrill"), the Bureau of Prison's ("BOP") Regional Director, denied Plaintiff's "Regional Administrative Remedy Appeal."[9] Id. at 17.

---

9 The thorough record provided by Defendants (see doc. 21) appears to indicate that the "Regional Administrative Remedy Appeal" dated May 8, 2005 by Plaintiff was rejected due to Plaintiff's failure to provide the required number of copies, but that Plaintiff subsequently filed another such appeal, to which Mr. Dodrill's June 22, 2005 is addressed. Given the similarity of the substance of Plaintiff's May 8, 2005 regional appeal and Mr. Dodrill's June 22, 2005 response, however, it appears that the appeal which Mr. Dodrill's June 22, 2005 response addresses was substantially similar to Plaintiff's May 8, 2005 regional appeal.

He did so on several grounds, including because "[t]he records do not support your contention that blood was drained from your knee or that the PA is not qualified to perform this procedure," and because the requested documents regarding Mr. Craig's credentials were not releasable to Plaintiff at the institution.[10]  Id.  Mr. Dodrill's June 22, 2005 denial of Plaintiff's regional appeal also indicated that if Plaintiff were not satisfied with Mr. Dodrill's response, Plaintiff could appeal to the General Counsel, Federal Bureau of Prisons, in Washington, D.C.  Id.

Plaintiff concedes that he made no such appeal to the General Counsel. (Rec. Doc. 26 at 6 ("[P]laintiff did not filed [sic] an appeal to the Central Office . . . .")).  Plaintiff contends that he failed to do the same because during the thirty (30) day period in which he could have filed an appeal, he was informed that he would "be referred to an orthopedic doctor for an MRI."[11]  Id. at 6.

## DISCUSSION:

The instant Motion seeks dismissal of the Complaint in its entirety, and, in the alternative, the entry of summary judgment in favor of all Defendants.  (See Rec. Doc. 20 at 1).  Specifically, Defendants contend: 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's claims against all Defendants

---

10 Mr. Dodrill indicated, however, that Plaintiff could seek such documents by filing a request with the Freedom of Information/Privacy Act Unit in the Office of General Counsel in Washington, D.C.

11 As indicated above, both a second MRI and an orthopedic consult were completed.

should be dismissed because the statute of limitations bars Plaintiff's claims; and 2) in the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be entered in favor of all Defendants because Plaintiff has not exhausted his administrative remedies. (Rec. Doc. 21 at 12-13).

Plaintiff counters each of Defendants' arguments. First, Plaintiff asserts that the statute of limitations does not bar his claims because "before January 2006, [Plaintiff] did not have any supported evidence other than his words that P.A. Craig, pinch [sic] his knee and broke a needle inside." (Rec. Doc. 26 at 9). Second, Plaintiff appears to contend that he sufficiently exhausted his administrative remedies as to render his claims properly before this Court. Id. at 2-7.

Although it is now well-established that under the Eighth Amendment, the government has an "obligation to provide medical care for those whom it is punishing by incarceration," Estelle v. Gamble, 429 U.S. 97, 103 (1976), certain procedural requirements must be satisfied prior to any analysis of whether a prison official exhibited deliberate indifference by "act[ing] or fail[ing] to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). In the instant matter, the relevant procedural doctrines are the

10

statute of limitations and the administrative remedy exhaustion requirement. As outlined below, Plaintiff's instant claims are barred by both of these doctrines.

As to the statute of limitations issue, both sides recognize (doc. 21 at 12; 26 at 8) that federal civil rights actions do not have a specific statute of limitations imposed by Congress. Accordingly, federal courts in Pennsylvania have adopted the Commonweath's two-year personal injury statute of limitations, 42 Pa. C.S. § 5524. See, e.g., Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000). The statute of limitations begins to run "'from the time the cause of action accrued,' which . . . [was] previously interpreted to mean when 'the first significant event necessary to make the claim suable' occurs." Id. at 366 (quoting Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d Cir. 1985)). However, as Plaintiff aptly notes, federal courts have recognized that the statute of limitations may be tolled for a number of reasons, such as minority or via operation of the discovery rule. See id. at 366.

Nevertheless, Defendants correctly assert that the only potentially relevant tolling mechanism to these circumstances, the discovery rule, "which tolls the statute of limitations until a plaintiff actually discovers the harm caused by an earlier inflicted but latent injury," id. at 367 (emphasis added), is not applicable. The discovery rule does not apply here because Plaintiff's Complaint clearly reveals that the injury allegedly inflicted by Mr. Craig in October 2004 was not

11

latent, and that Plaintiff knew of the alleged harm at the moment it was allegedly inflicted.  (See Rec. Doc. 1 at 5 ("P.A. Craig began to drain my knee again with a big needle and I felt that he, pinch me, and something prick inside my knee.  I scream loud and, told him, it hurts.  He looks nervous and he told me that everything was alright.  I saw blood with yellow liquid coming out of my knee, and I ask P.A. Craig about it and he told me that it was normal not to worry.  But I told him, last time you drain my knee there was no blood in the liquid.") (emphasis added)).  Contrary to Plaintiff's assertions, the discovery rule does not toll the statute of limitations until such point as plaintiffs have evidence to support their claims.  Thus, because the first significant event to make Plaintiff's claim suable, Mr. Craig's alleged breaking of a needle in Plaintiff's knee, occurred in October 2004, more than two years prior to his April 2007 commencement of this suit, pursuant to Fed. R. Civ. P. 12(b)(6), we will dismiss with prejudice Plaintiff's claims against Defendants because they are barred by the statute of limitations.

Assuming arguendo that Plaintiff's claims are not barred by the statute of limitations, we turn to the issue of administrative remedies exhaustion.  42 U.S.C. 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other federal law, . . . until such administrative remedies are exhausted," and, thus, courts have repeatedly

interpreted administrative remedy exhaustion as mandatory.  See, e.g., Woodford v. Ngo, 548 U.S. 81 (2006); Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 739 (2001); Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000).  The exhaustion requirement is not satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal"; "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of proceedings."  Woodford, 126 S.Ct. at 2382, 2386.  To be clear, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory."  Id. at 2382 (indicating also that regardless of the relief the administrative process can provide or the nature of the claim asserted, prisons must exhaust the administrative remedies).  Thus, whatever Plaintiff's explanation for his failure to complete the administrative grievance process, it is immaterial.  Accordingly, as 28 C.F.R. § 542.15 explicitly states that in the BOP's administrative grievance process, "[a]ppeal to the General Counsel is the final administrative appeal," id., and as Plaintiff has conceded (doc. 26 at 6), and the record confirms, that Plaintiff has not filed such an appeal, Defendants are entitled to summary judgment on Plaintiff's claims.

13

**CONCLUSION:**

For all of the aforestated reasons, Defendants' "Motion to Dismiss or, in the Alternative, for Summary Judgment" (doc. 20) shall be granted. An appropriate Order closing this case shall issue on today's date.